UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL HARRIS #121394,

    Plaintiff,

                                                    Case Number 14-10304

v.

                                                    District Judge John Corbett O'Meara

ADAM KANDULSKI, *et. al.*,              Magistrate Judge R. Steven Whalen

    Defendants,

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Paul Harris ("Plaintiff"), a Michigan Department of Correction ("MDOC") inmate presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, has filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is MDOC Defendants Dennis Schur, Yvonne Gorton, Donald Ricumstrict and Susan McCauley's Motion for Summary Judgment [Doc. #23], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that these Defendants be DISMISSED WITH PREJUDICE.

**I.   FACTS**

Plaintiff filed suit on January 21, 2014, alleging violations of his Eighth and Fourteenth Amendment rights. *Complaint, Docket #1*. He makes the following allegations.

He has experienced paralysis of the legs since a February, 2000 accident. *Id.* at ¶¶11-19. He was given permanent "ground floor/no stair climbing" special accommodations by medical staff employed by the MDOC on October 2, 2002. *Id.* at ¶20. The accommodations were still in effect when he was transferred to the Saginaw Correctional Facility on July 31, 2012. ¶21. He was initially placed in a unit without accommodations, but later moved to an accommodated unit (unit 800) by order of Health Unit Manager, Defendant Susan McCauley ("Defendant McCauley") who acknowledged that Plaintiff required access to the handicap lift located in unit 800. *Id.* at ¶21.

Despite the fact that the special accommodations were renewed on August 21, 2012, Plaintiff was transferred to an upper tier in unit 900, a non-accommodated unit, on February 22, 2013. *Id.* at ¶23. Plaintiff informed non-defendant Officer Kelly that he required placement in an accommodated unit. *Id.* Officer Kelly later told Plaintiff that he spoke with Defendant Dennis Schur ("Defendant Schur") who informed Officer Kelly that he was aware of the accommodation when he assigned Plaintiff to the non-accommodated unit. *Id.* On February 26, 2013, Plaintiff also asked Assistant Resident Unit Manager ("ARUM") Defendant Yvonne Gorton[1] ("Defendant Gorton") for a transfer back to unit 800 due to difficulty and pain climbing the stairs in the new unit. *Id.* at ¶24.

On February 28, 2013, Plaintiff fell while descending the stairs in unit 900, injuring

---

[1] Defendant Gorton disputes Plaintiff's allegation that she was an ARUM, stating instead that she was a counselor. *Defendants' Exhibit 2, Affidavit of Yvonne Gorton* at ¶4.

his neck, left knee, and head. *Id.* at ¶25. On the morning of March 1, 2013, Deputy Warden Defendant Donald Ricumstrict ("Defendant Ricumstrict") interviewed Plaintiff for an incident report regarding the fall. *Id.* at ¶26. Ricumstrict informed Plaintiff that he was not entitled to use a handicap lift because he did not require a wheelchair. *Id.* The same day, Defendant Dr. Adam Kandulski ("Dr. Kandulski") informed Plaintiff that he had been scheduled for a March 4, 2013 medical examination at which time, the special accommodations would be reviewed. *Id.* Plaintiff filed a grievance against Defendants Ricumstrict, McCauley, and Dr. Kandulski the same day. *Id.* On March 4, 2013, Plaintiff's grievance was rejected. *Id.* at ¶27. The medical appointment for the same day was cancelled. *Id.*

On March 6, 2013 Dr. Kandulski cancelled the special accommodation. *Id.* at ¶28. Plaintiff alleges that Dr. Kandulski cancelled the special accommodation at the request of Ricumstrict and McCauley. *Id.* On March 16, 2013, Plaintiff requested a reinstatement of the accommodation. *Id.* at ¶31. On April 2, 2013, he "fell to his knees" while climbing the stairs to his cell which resulted in the scarring of both knees. *Id.* at ¶33. On September 12, 2013, Plaintiff was transferred from the Saginaw Correctional Facility to the Lakeland Correctional Facility. *Id.* at ¶37.

Plaintiff alleges that Defendant Schur violated his rights by "intentionally" interfering with the his medical need for a special accommodation. *Id.* at ¶39. He alleges that Defendant Gorton showed "deliberate indifference" to Plaintiff's condition by ignoring his

request for re-implementation of the accommodation. *Id.* at ¶40. He alleges that Defendant Ricumstrict violated his rights by failing to have him moved from the 900 unit back to the 800 unit where he would have access to a handicap lift. *Id.* at ¶41. He alleges that Defendant Ricumstrict had no basis for determining that only wheelchair bound prisoners required the use of the handicap lift. *Id.* He alleges that Defendants McCauley and Dr. Kandulski violated his rights "when they acted in concert and conspired with [Defendant] Ricumstrict" to cancel the accommodation "without good cause or reason." *Id.* at ¶42. Plaintiff claims that "[n]othing . . . transpired" between the time he was assigned to the accommodated unit and his transfer to the non-accommodated unit which would justify the cancellation of the special accommodation. *Id.*

Plaintiff seeks monetary damages and declaratory relief.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III. DISCUSSION

Present Defendants argue that Plaintiff cannot show that they were deliberately

indifference to his medical needs. *Defendants' Brief,* 6-10, *Docket #23.* Even assuming that Plaintiff could establish an Eighth Amendment violation, Defendants contend that they are entitled to qualified immunity because their actions were not objectively unreasonable. *Id.* at 11-13.

### A. Applicable Law

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle,* 429 U.S. at 106; *Comstock,* 273 F.3d at 703.

"Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

### B. Defendant Schur

Defendant Schur, a corrections officer at the Saginaw Correctional Facility, acknowledges that he processed a room move for Plaintiff on February 22, 2013. *Defendants' Exhibit no. 1, Affidavit of Dennis Schur* at ¶3. Defendant Schur states that at the time of move, he was "not aware of a special accommodation or that the medical needs of [Plaintiff] prohibited him from moving to the new cell." *Id.* He states further that he was not aware that the cell move would put Plaintiff "at risk of harm." *Id.*

In response, Plaintiff's reiterates his original allegation that Defendant Schur told a non-Defendant officer that he was aware of the accommodation at the time he processed the cell transfer to the non-accommodated unit. *Complaint* at ¶23, *Response* at pg. 1.

Assuming the truth of the hearsay statement that Defendant Schur knew of the accommodation at the time of the transfer, Plaintiff is nonetheless unable to show that the officer was deliberately indifferent to his medical needs. March 6, 2006, medical records by Dr. Kandulski note that Plaintiff no longer required special accommodations. *Plaintiff's*

*Exhibit 13.* Dr. Kandulski noted that Plaintiff had recently been observed walking "down and up the stairs without any major difficulty." *Id.* Dr. Kandulski found that the "ground floor accommodation" was "likely . . . a remnant of a [former] tiered facility accommodation ." *Id.* Dr. Kandulski's findings indicate that the transfer to the non-accommodated unit was made in response to staff observation that Plaintiff did not experience problems using stairs. While Plaintiff notes that an accommodation cannot be cancelled without the approval of a "medical practitioner," pursuant MDOC Policy Directive ("P.D.") 04.06.160(M) (June 30, 2008), Dr. Kandulski's notes showing that Plaintiff was seen using the stairs without difficulty at the time of transfer stands at odds with the conclusion that Defendant Schur was aware that the cell transfer would place Plaintiff in harm's way. Because Plaintiff cannot show that Defendant Schur was negligent, much less deliberately indifferent in processing the cell transfer, he is entitled to dismissal.

## C. Defendant Gorton

Plaintiff allegation that he asked Defendant Gorton for a transfer back to unit 800 two days before the accident, with nothing more, does not establish that she was deliberately indifferent to his difficulty climbing stairs or his danger of falling. *Complaint* at ¶24. First, Defendant Gorton denies that she held the position of ARUM or any supervisory position. *Defendants' Exhibit 2, Affidavit of Yvonne Gorton* at ¶4. She states that she was a prison counselor and did not recall having a conversation with Plaintiff about a cell transfer two days before the February 28, 2013 fall. *Id.* at ¶5. Further, she states that she "did not have

. . . the authority to move [Plaintiff] to handicapped cell, noting that Plaintiff would have required a "barrier free/wheelchair accessible accommodation" for the requested move. *Id.* She notes that Plaintiff's accommodation for "ground floor/no stair steps accommodation" would not have entitled Plaintiff to his request for a unit with a wheelchair lift. *Id.* Because Defendant Gorton has established that she did not have the authority to make the requested transfer, Plaintiff cannot show that she was deliberately indifferent to his medical needs.

### D. Defendant Ricumstrict

Defendant Ricumstrict, Deputy Warden at the Saginaw Correctional Facility denies the claim that he was deliberately indifferent to Plaintiff's medical condition or conspired with Defendants McCauley and Dr. Kandulski deprive Plaintiff of a special accommodation. *Defendants' Exhibit 3, Affidavit of Donald Ricumstrict* at ¶¶5-6. He acknowledges that he talked to Plaintiff about his request for placement in a unit with an elevator, but recommended to Plaintiff that he send a kite to health care for resolution of the issue. *Id.* at ¶3. Defendant Ricumstrict notes that he did not have the authority to cancel an accommodation, adding that medical accommodations "are issued by health care staff, not custody staff." *Id.* at ¶¶4-5. Ricumstrict's statement that he did not have the authority to cancel Plaintiff's special accommodation is consistent with the MDOC Policy Directive requiring that the approval or cancellation of an accommodation must be implemented by a "medical practitioner." *See* MDOC P.D. 04.06.160(M), *supra.* Because Plaintiff cannot show that Defendant Ricumstrict was aware, much less responsible for the transfer to the 900

unit or the cancellation of the accommodation, the claim against him is subject to dismissal.

### E. Defendant McCauley

Defendant McCauley, the Health Unit Manager at the Saginaw Correctional Facility, denies that she requested the cancellation of Plaintiff's special accommodations. *Defendants' Exhibit 4, Affidavit of Susan McCauley* at ¶3. She states that she had "no authority to discontinue a special accommodation." *Id.*

In response, Plaintiff disputes Defendant McCauley's statement, citing Dr. Kandulski's interrogatory response that he "believe[d] that Health Unit Manager Susan McCuley (sic) asked him to review Plaintiff's special accommodation." *Plaintiff's Exhibit 10*. However, the fact that Defendant McCauley asked Dr. Kandulski to review the special accommodation does not support Plaintiff's contention that Defendant McCauley sought to have the accommodations cancelled. To the contrary, Plaintiff sought an examination with Dr. Kandulski for the purpose of establishing that he was eligible for the continuation of the "ground floor/no steps accommodation" or the additional accommodation of a "barrier free/wheelchair accessible" unit. *Complaint* at ¶26, *Plaintiff's Exhibit 13*. None of Plaintiff's exhibits support the contention that McCauley sought to discontinue a required accommodation or was otherwise deliberately indifferent to Plaintiff's medical needs. As such, the Eighth Amendment claim against Defendant McCauley should be dismissed.

### F. Qualified Immunity

Defendants also argue that they are protected by qualified immunity. *Defendants'*

*Brief* at 10-13. Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Under *Saucier,* the inquiry was sequential, requiring the district court to first consider whether there was a constitutional violation. However, in *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, Pearson commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

As discussed above, none of the four present Defendants violated Plaintiff's Eight Amendment rights. Therefore, they are entitled to qualified immunity under the first prong of *Saucier*.

### IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion for Summary Judgment [Doc. #23] be GRANTED, dismissing these Defendants WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140,

106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: February 28, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was sent to parties of record on February 28, 2015, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager

-12-