UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL HARRIS #121394,

      Plaintiff,

                                Case Number 14-10304

v.

                                District Judge John Corbett O'Meara

ADAM KANDULSKI, *et. al.*,          Magistrate Judge R. Steven Whalen

      Defendants,

_____/

## REPORT AND RECOMMENDATION

On January 21, 2014, Plaintiff Paul Harris ("Plaintiff"), a Michigan Department of Correction ("MDOC") inmate presently confined at the Lakeland Correctional Facility in Coldwater, Michigan, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Dr. Adam Kandulski's Motion for Summary Judgement [Doc. 33], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED, and that this Defendant be DISMISSED WITH PREJUDICE.

## I.    FACTS

Plaintiff filed suit on January 21, 2014, alleging violations of his Eighth and Fourteenth Amendment rights. *Complaint, Docket #1.* He makes the following allegations. He has experienced paralysis of the legs since a February, 2000 accident. *Id.* at ¶¶11-19. He was given permanent "ground floor/no stair climbing" special accommodations by

-1-

medical staff employed by the MDOC on October 2, 2002. *Id.* at ¶20. The accommodations were still in effect when he was transferred to the Saginaw Correctional Facility on July 31, 2012. ¶21. He was initially placed in a unit without accommodations, but later moved to an accommodated unit (unit 800) by order of Health Unit Manager, former Defendant Susan McCauley, who acknowledged that Plaintiff required access to the handicap lift located in unit 800. *Id.* at ¶21.

Despite the fact that the special accommodations were renewed on August 21, 2012, Plaintiff was transferred to an upper tier in unit 900, a non-accommodated unit, on February 22, 2013. *Id.* at ¶23. Plaintiff informed non-defendant Officer Kelly that he required placement in an accommodated unit. *Id.* Officer Kelly later told Plaintiff that he spoke with former Defendant Dennis Schur, who informed Officer Kelly that he was aware of the accommodation when he assigned Plaintiff to the non-accommodated unit. *Id.*

On February 26, 2013, Plaintiff also asked Assistant Resident Unit Manager ("ARUM") former Defendant Yvonne Gorton[1] for a transfer back to unit 800 due to difficulty and pain climbing the stairs in the new unit. *Id.* at ¶24. On February 28, 2013, Plaintiff fell while descending the stairs in unit 900, injuring his neck, left knee, and head. *Id.* at ¶25. Also on February 28, 2013, present Defendant Dr. Adam Kandulski informed Plaintiff that he had been scheduled for a March 4, 2013 medical examination, at which time

---

[1]Defendant Gorton disputes Plaintiff's allegation that she was an ARUM, stating instead that she was a counselor. *Defendants' Exhibit 2, Affidavit of Yvonne Gorton* at ¶4.

the special accommodations would be reviewed. *Id.* Plaintiff filed a grievance against former Defendants Ricumstrict, McCauley, and Dr. Kandulski the same day. *Id.* On the morning of March 1, 2013, Deputy Warden and former Defendant Donald Ricumstrict interviewed Plaintiff for an incident report regarding the fall. *Id.* at ¶26. Ricumstrict informed Plaintiff that he was not entitled to use a handicap lift because he did not require a wheelchair. *Id.*

On March 4, 2013, Plaintiff's grievance was rejected. *Id.* at ¶27. The medical appointment for the same day was cancelled. *Id.* On March 6, 2013 Dr. Kandulski cancelled the special accommodation for the handicap lift. *Id.* at ¶28. Plaintiff alleges that Dr. Kandulski cancelled the special accommodation at the request of Ricumstrict and McCauley. *Id.* On March 16, 2013, Plaintiff requested a reinstatement of the accommodation. *Id.* at ¶31. On April 2, 2013, he "fell to his knees" while climbing the stairs to his cell which resulted in the scarring of both knees. *Id.* at ¶33. On September 12, 2013, Plaintiff was transferred from the Saginaw Correctional Facility to the Lakeland Correctional Facility. *Id.* at ¶37.

Plaintiff alleges that former Defendant McCauley and Dr. Kandulski violated his rights "when they acted in concert and conspired with [former Defendant] Ricumstrict" to cancel the accommodation "without good cause or reason." *Id.* at ¶42. Plaintiff claims that "[n]othing . . . transpired" between the time he was assigned to the accommodated unit and his transfer to the non-accommodated unit which would justify the cancellation of the special accommodation. *Id.* Plaintiff seeks monetary damages and declaratory relief.

Claims against Defendants Gorton, McCauley, Ricumstrict, and Schur were dismissed with prejudice on March 24, 2015. *Docket #44.*

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990).  Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing

-4-

party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.   DISCUSSION

Dr. Kandulski argues that Plaintiff's Eighth Amendment claims against him fail as a matter of law. *Defendant's Brief,* 15-19, *Docket #33.*

### A.  Applicable Law

The Supreme Court has held that Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble,* 429 U.S. 97, 103; 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2002). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Id.* Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer

-5-

substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.*

Deliberate indifference may be established by showing an interruption of a prescribed plan of treatment, or a delay in medical treatment. *Id.*; *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992). However, mere negligence or misdiagnosis of an ailment does not rise to the level of a constitutional violation. *Estelle*, 429 U.S. at 106; *Comstock*, 273 F.3d at 703. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble, supra*, 97 S.Ct. at 292 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition").

### B. Plaintiff Cannot Show That Dr. Kandulski was Deliberately Indifferent

Dr. Kandulski denies that Plaintiff's medical care was substandard, much less that it amounted to an Eighth Amendment violation. *Defendant's Exhibit A, Affidavit of Adam Kandulski, M.D.* Dr. Kandulski acknowledges Plaintiff's history of back problems, prostate cancer, and Hepatitis C, noting that the conditions were "monitored closely at chronic care appointments." *Id.* at ¶¶ 5-6. He notes that as of January, 2012, Plaintiff reported that he was able to perform daily activities with the help of a cane. *Id.* at ¶ 7 (*citing* Ex. A-1 at 77, 81, 326, 355). He notes that in the year preceding the 2013 events, Plaintiff received a bone scan, multiple oncology consultations, and followup appointments for Hepatitis C and back

pain. *Id* at ¶ 8 (*Id.* at 87, 105, 120, 124-128, 133-135).  He notes December, 2012 treating records which state that after Plaintiff was accused of faking a fall by a staff member, he claimed that he had blood in his urine, but refused to submit to a witnessed urine sample. Plaintiff was argumentative but did not appear to be in distress. *Id.* at ¶ 10 (*Id.* at 194).

Dr. Kandulski notes that on February 28, 2013, Plaintiff was evaluated by a nurse following his fall and given pain medication.  *Id.* at ¶ 13 (*Id.* at 250).  According to the same medical records, Plaintiff reported that he did not like using a cane.  *Id.*  The nurse advised him to make use of the stairway handrails as well as his cane in using the stairs.  *Id.*  One day later, former Defendant McCauley observed that Plaintiff took the February 28, 2013 fall "promptly" after complaining that his condition required a change of unit.  *Exhibit A-1* at 252.  McCauley opined that Plaintiff's current special accommodation appeared to be "outdated," noting that Plaintiff had been observed "ambulating stairs without any problem" since 2008. *Id.*  She noted that Plaintiff's "ground floor" restriction required "re-evaluation." *Id.*

Dr. Kandulski examined Plaintiff later the same day, March 1st, at which time he noted that the severity of Plaintiff's condition was "mild." *Affidavit* at ¶ 15 (*Exhibit A-1* at 255-256).  Dr. Kandulski nonetheless prescribed Naproxen and ordered a cervical x-ray.  *Id.* (*Id*).  He notes that the results of the x-ray were unremarkable.  *Id.* at ¶ 18 (*Id.* at 263).  Dr. Kandulski states that he examined Plaintiff on March 6, 2015 for the purpose of reviewing the special accommodations, finding that Plaintiff no longer required "ground floor/no stair

-7-

climbing" accommodations.[2]   *Id.* at ¶ 16.   Dr. Kandulski states that he made the determination after "reviewing Plaintiff's chart, speaking to him, and discussing his condition with prison officials."   *Id.*   He did not remove Plaintiff's other accommodations which consisted of "Bottom Bunk, Knee Brace, Athletic Shoes, Cane, and Sit-down Job."   *Id* at ¶ 17 (internal punctuation omitted).   He notes that Plaintiff's July, 2013 renewed request for the "ground floor" was denied after Plaintiff was observed walking without difficulty and found to be capable of using the stairs "if he took his time."[3] *Id.* at ¶ 20 (*Id.* at 308-309, 311-312).   Dr. Kandulski acknowledges that after Plaintiff's September, 2013 transfer to another MDOC facility, he received special shoes for foot pain and in January, 2014, requested and received a renewed accommodation for "ground floor/no stair climbing" after Plaintiff was observed "almost stumbling over his feet" and walking with a "scissor gate."   *Id.* at ¶¶ 23-24.

   In response, Plaintiff states that his lower extremities problems were well established before the February 28, 2013 fall.  *Response,* 3, *Docket #38, Plaintiff's Rebuttal* , 5, *Docket #42.*  Plaintiff also notes, in effect, that the "ground/floor no stair" accommodation was actually removed two days before Dr. Kandulski's March 8, 2013 examination. *Response* at 1.

---

   [2]The medical records state that the evaluation was performed on March 8, not March 6.  *Defendant's Exhibit A-1* at 263-264.

   [3]The cited medical records state that Plaintiff was re-evaluated in May, 2013, not July, 2013.

Assuming the truth of Plaintiff's allegations, Dr. Kandulski is nonetheless entitled to summary judgment. Even though Dr. Kandulski's examination was conducted two days after the "ground floor/no stairs" accommodation was removed, Plaintiff cannot dispute that Dr. Kandulski had already examined him on March 1, 2013 and found that the severity of his condition was "mild." *Dr. Kandulski Affidavit* at ¶ 15 (*Exhibit A-1* at 255-256). Dr. Kandulski's notes from the March 1, 2013 examination also state that Plaintiff did not appear to have "any significant cervical spine injury" and did not exhibit "motor or sensory deficits." *Exhibit A-1* at 256. Moreover, at the time of Dr. Kandulski's March 1, 2013 examination, the medical records already contained mention of two separate incidents in which Plaintiff had been suspected of "faking" falls for the purposes of obtaining additional accommodations and/or a change of housing unit. *Id.* at 194, 252. Prior to Dr. Kandulski's examination, former Defendant McCauley observed that the accommodations "appeared to be outdated" based on her own interaction with Plaintiff. *Id.* at 252.

Moreover, the allegation that Dr. Kandulski showed deliberate indifference by cancelling one of the accommodations is undermined by the fact that he left the other accommodations intact. The medical records show that Plaintiff was provided with regular followup medical care between March, 2013 and his September, 2013 transfer to another facility. *Id.* at 263-266, 276-285, 288-293, 308-309, 311-312, 340. September, 2013 treating records just after the transfer show that Plaintiff was "ambulating steadily" with a cane. *Id.* at 355. The fact that the disputed accommodations were reinstated by another care provider in January, 2014, with nothing more, cannot be used to establish that Dr. Kandulski's March,

2013 decision to cancel one accommodation amounted to deliberate indifference. Even assuming that Dr. Kandulski's medical judgment "fell below professional standards," "[m]isdiagnoses, negligence, and malpractice are not . . . tantamount to deliberate indifference." *Gabehart v. Chapleau,* 1997 WL 160322, *2 (6th Cir. April 4, 1997). *See Estelle, supra; Westlake, supra.* Plaintiff has at most stated his disagreement with the treatment provided and with Dr. Kandulski's assessment of the need for specific accommodations. He has not made out a claim for deliberate indifference.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #33] be GRANTED, dismissing this Defendant WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

/s/R. Steven Whalen_____
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated:  August 5, 2015

## Certificate of Service

I certify that a copy of this document was served upon parties of record via electronic or postal mail.

/s/A. Chubb_____
CASE MANAGER